The first argument will be in case number 23-656, Belatoni v. Lamont. Thank you. Mr. Carlon, whenever you're ready. May it please the Court. Attorney Matthew Carlon for the Plaintiff Appellants in this case. We brought this appeal to address whether or not the district court correctly dismissed the plaintiff's 1983 claim against Governor Lamont seeking monetary damages on the grounds that his actions were protected by the doctrine of qualified immunity. In order to answer that issue, we are presenting three questions of grave significance to this court, grave constitutional significance. The first is, do individuals have a clearly established constitutional right to choose not to take an experimental drug that does not protect or does not prevent infection or transmission of COVID-19? If so, the next issue... Can I stop and ask you there, like, is that a bit of putting merits before the inquiry? If we have to figure out that it's experimental or that it is, what was the word, untested that you used, how are we able to see that it's clearly established? How are we able to do the clearly established inquiry? Well, Your Honor, the issue is that this is a motion to dismiss, so all the allegations of the complaint have to be accepted as true. And in the complaint, we allege facts demonstrating that at the time Governor Lamont issued the mandate and while the mandate was in effect, the only vaccine that was available was the B162 Pfizer product and the analogous Moderna product that were only available under emergency use authorization. So by definition, they were experimental drugs. Okay, but can we... Does a vaccine have to prevent infection or transmission 100% of the time for your argument to be successful? I don't believe so, Your Honor. The issue is we're not arguing that in the abstract, though. What we're arguing is what are the facts of this particular vaccine based on the FDA, CDC, Connecticut Department of Health? No, but my question, I mean, my question more is, is that could it not be in the public interest even if it wasn't 100%? I mean, couldn't it still be in the public interest if it just reduced a bit? Doesn't your argument rest on needing to 100% prevent infection and transmission? Well, Your Honor, I don't think it does because the question becomes what does the evidence say? And in the documents, they never tested for whether or not this vaccine prevents transmission. There is no evidence of that. The FDA said so in its authorization. The FDA approved the drug. The FDA granted emergency use authorization. And in the review granting memorandum, they admit they never tested the drug for whether or not it prevents transmission. Well, they approved it. My question is if you're looking at what the governor did in terms of qualified immunity, I don't know what clearly established law there was, but you'll tell me, and also clearly established law that would have made it very clear that he was violating the Constitution. Well, Your Honor, the issue about the clearly established law goes all the way back to the Jacobson case in 1905, which I will point out actually predates the creation of the FDA. Yeah, but that was a case. The facts of that case was that they – that was – was it smallpox? Correct. It prevented smallpox, and that was fine. But vaccines can do more than just prevent something. They can mitigate circumstance, mitigate damages. And so – and that was a case in which, you know, the petitioner lost, the plaintiff lost. I mean, it was upheld for the state of Massachusetts. Well, Your Honor. I don't – I don't understand your argument here today, given these circumstances. You know, here we are 118 years later, and we're – you know, what the facts are here that put the governor on notice that he was violating the Constitution when he did this. Well, Your Honor, the Jacobson case is very clear that there is a right to bodily autonomy to choose what an individual can have to go into their body, what drugs they can take. What Jacobson also said, however, was that in the case of the smallpox vaccine, because the vaccine prevented transmission and infection of smallpox, that the state had a superseding interest that outweighed the individual liberty interest. And because of that, the Supreme Court said that the state's actions were constitutional. But I will point out that in Jacobson, that law was issued after debate by the Department of Health and legislative enactments. So that's a different situation than we had here where a governor – This isn't even a straight mandate rule. They're given an option as to whether to test. That's correct, Your Honor, but there's no reason to test if the vaccine doesn't prevent infection or transmission of COVID-19. But, I mean, you just said that they had the right to reject an experimental vaccine that doesn't prevent infection. They, in fact, exercised that right. They chose not to take it. So where is the constitutional violation? Well, Your Honor, because some of them were placed on unpaid administrative leave, and others of them were required to test weekly. But assuming that the facts that we allege are true, which they are, that it does not prevent infection or transmission of the disease, how does testing weekly for a drug and only testing people that have taken the vaccine, how does that not – No, I thought it was people who didn't take the vaccine. Excuse me. Yes, that's what I meant. Didn't take the vaccine. Yeah, that didn't take the vaccine. But as the evidence that we allege in the complaint shows, people that are unvaccinated and vaccinated are equally likely to contract and spread the disease. And, in fact, the Department of Health from Connecticut, the data shows, and I used in the complaint, I used the graph of the actual numbers from the DPA showing that cases actually increased 60 percent during the time that the mandate was in effect. So the question for us is what clearly established law prevented the governor from doing this? And your answer is Jacobson, which seems to go against you and in any event would be different.  Well, no, Your Honor. The two things. I don't think that – I disagree that Jacobson goes against this. I believe it actually supports our argument because of the fact that the entire case of Jacobson – That's your case. That's one case, and you were asked if that's – if you have anything else. Well, as I pointed out to the district court, although we're not making a claim under Connecticut law, Connecticut statutes prevented the governor from issuing a vaccine or mandating a vaccine that does not prevent infection or transmission of the disease. But as far as the case law goes, you're correct. Every case is supported by Jacobson, so everything goes back to that case. And every case not only is supported by Jacobson, but every case comes out in favor of the government. Because in all those cases, Your Honor, it was presupposed or in fact that the drug prevented infection or transmission of the disease. There is no evidence that that was true at any time in this case, particularly when Governor Lamont issued his vaccine mandate. No, you're right. I mean, there's evidence there that it didn't prevent, and that's what you pointed out. Correct. But it can mitigate. I disagree, Your Honor. There's no – What do you mean? There's no evidence in the actual FDA documents, and that's what I was trying to explain through the allegations and the complaints. But didn't he have a basis for understanding that there could be mitigation here because the FDA had approved the drug? But, Your Honor, whether or not the FDA approves the drug is actually based on a number of factors, not to mention the primary one of the Operation Warp Speed. I'm talking about what he needed to know in his head in terms of qualified immunity. Here's a drug that was approved by the FDA. It doesn't prevent, but it will mitigate. But beyond that, if they don't want to take it, they can get tested. Every other case, they don't have a testing option that I'm familiar with. But, Your Honor, in every other case, the key component that we're arguing that makes this case different is that the drug actually prevented infection, transmission of the disease, whereas here there is no evidence of that. As hard as that is to hear— Well, now, of course, it gets a little confusing because in hindsight now, we know that no vaccine prevents. None of these COVID vaccines really prevent it. What they do is mitigate. People get COVID afterwards, you know, after they've taken it. There's no evidence of that, Your Honor. I apologize to tell you that, but there's—the FDA, the official documents, there's actually no evidence of that. So let me ask the question a different way. So a majority of the governors in the country enacted a similar law. What does that do to the qualified immunity in terms of it clearly establishing that there was no ability for a governor to do that? I mean, wouldn't it seem reasonable if a majority of the governors in the country enacted similar laws? No, Your Honor, because the only thing that makes an action reasonable is what the evidence says. No, no, no. Clearly established. Was it clearly established that it was not permissible given that a majority of the governors in the country had already enacted a similar law? The clinical data establishes that it was not reasonable. So it's no different than if every other governor in the state and in the country had ordered or mandated that the plaintiffs jump off a bridge to prevent COVID-19. If they had done that, would that have made the Governor Mott's actions any more reasonable? Of course not. Okay. Thank you, counsel. You've reserved a couple minutes. Let me just ask one other question. Go ahead. What is the burden on anybody about just taking a test in terms of being tested instead of taking the vaccine? Well, Your Honor, they had to go outside of their work hours. There was additional burden, and they had to pay for the testing. So there was a financial burden and an additional time burden on them that was solely a function of whether or not they took a vaccine that doesn't prevent the infection or transmission. The actual testing, you're saying it's the baby. I don't see if there's any standards for the test itself. But we've all taken tests, and it's part of life now. It was during COVID, anyway, to be tested. And that doesn't seem to me terribly intrusive or burdensome. Your Honor, the issue is not a degree of whether or not the amplitude of the violation. The question is, does it violate it? Mandating somebody take a test. Well, it only violates if it places an improper or undue burden on the person who's the subject of it. Correct, Your Honor. But the issue is that the testing regime was completely dependent and contingent upon whether or not they took the vaccine that didn't work in the first place. So the fact that it's whether you would characterize it as a minor burden or I would characterize it as a significant burden is irrelevant to whether or not it is, in fact, a burden that triggers constitutional. Whatever the burden is also, then, it seems to me it's minor. But in any event, it seems to me also that that is a very legitimate request on the part of the government to take the test if you're not going to get vaccinated. And the reason is that if you take the test, you can be sent home. You're not going to infect other people. In some ways, it's better than just taking the vaccine itself, which doesn't work in every case. I couldn't disagree more, Your Honor, because of the fact that they weren't testing the teachers that did take the vaccine. So they were potentially going around in schools spreading the disease undetected because they were taking the test. So there is no reasonable, rational, logical, ethical, moral justification for making only people that did not take a drug that didn't work to test if, in fact, the drug doesn't work. If it does, I am totally on board with what you said. Oh, okay. So you'll accept the fact that if the drug works to some degree in furtherance of the public interest, then that is sufficient? I don't agree that to some degree is the proper standard. The question is whether or not the drug works. Well, if it works or not, it's not an absolute question. It may soften the blow of COVID. Well, we've actually alleged facts demonstrating quite the exact opposite. That there was actually studies out before the mandate went into effect showed that there was increased cases, COVID-19 cases, if you had taken a vaccine. So what you're saying is it's worse than taking a placebo? Yes. In other words, if you had taken a placebo and the vaccine was just water, that would be, which is clearly, obviously, it may be safe, but it's not effective. Is that this is a worse case than that? This is a worse case than that, and it's not even safe, Your Honor, because- What is the evidence that you have, that you point to, that it doesn't have mitigation effect? I can point to it because I reserve two minutes for rebuttal, and I'm happy to point that out to you. Yeah, okay. You can do a rebuttal. Okay. Thank you, counsel. Mr. Cunningham. Thank you, Your Honor. Assistant Attorney General Darren Cunningham for Governor Lamont. Your Honor, counsel may please the court. This appeal concerns whether a suit against Governor Lamont as an individual capacity can proceed for a temporary requirement that Connecticut teachers be vaccinated against COVID-19 or take a weekly test to ensure that they do not have COVID-19. The district court correctly held that based on over a century of precedent from the Supreme Court and many cases from this court, qualified immunity required dismissal. Encouraging vaccination- You're reading and you're dropping your voice. Sure. So I'm not hearing everything you're saying. Sure. Sorry, Your Honor. If you look at us when you speak, that would help. Yes, Your Honor. So encouraging vaccination of this sort in a once-in-a-century pandemic is exactly the type of decision-making that is protected by qualified immunity. So may I ask, your colleague on the other side is suggesting that, or alleging that the vaccine did not protect the public, and we do have to take the allegations as true. Do we need to accept an allegation like that as true no matter what, or is there something different about this fact? No, Your Honor. We don't have to accept it as true no matter what. I think what we do have to, we have to look at Iqbal and Twombly for the fact that there's a plausibility standard. I don't actually even think we need to do that because even if you accept what they say about transmission and getting the disease itself, there are other reasons that the governor gave. He mentions in his executive order specifically hospitalization interests. In fact, he specifically mentions that it will mitigate the disease in his executive order G. So maybe if I ask the question a different way, does a vaccine need to protect the public in order for a mandate to be constitutional? And if so, is it a degree question or is it just something else? Well, no, and I think the question is whether there's any clearly established law saying that in the first instance. But again, I think it's clear even if you look at the complaint and even if you take it as it's written, what it really says is that there were studies in existence when the governor issued the executive order. That's, I think, what the plaintiff alleges means the governor sort of knew about these certain things. But the governor explains in his executive order what he's relying on, the FDA and the CDC. And so I think even under the best case scenario, and like we said, the complaint doesn't even address certain other reasons the governor gave for issuing the executive order. So I think under those circumstances, even if you take their complaint, you could say that the governor was still relying on other government entities. And as Judge Perez pointed out, other governors did this. The district court pointed out that the president issued a mandate of this sort. And under these circumstances, we think it would be completely inappropriate to strip the governor of qualified immunity under these circumstances. And the legislature had also declared a public health emergency, and that was the authority pursuant to which the governor issued the order, was it not? Yes, they have, Your Honor. And does that factor into the analysis? So I'm not sure specifically on qualifying immunity because typically it depends on federal law and clearly established law by this court. But in the Casey v. Lamont decision, the Connecticut Supreme Court has already affirmed that the governor of the state acted lawfully pursuant to his emergency authority. The district court discussed this. And before I get too far, I do want to mention that I agree with two – well, I'd like to point out two things. First, we don't view this as a true vaccine mandate case because, as has been discussed, there was a testing option. And you really have to think of it, if the governor had not even issued a vaccine mandate but he had issued a testing mandate, these plaintiffs would still be here. There were 15 plaintiffs. Thirteen of them took tests. Two refused to take tests. So they would still be complaining even if there was just the testing option. So really, I understand the complaint is mostly about the vaccines and everything, but that's actually really a bit of a red herring because none of them were required to take the vaccine. And, in fact, none of them did. And I think Judge Walker was pointing out that most of the cases, if not all the cases in the country, I think, frankly, plaintiffs would have killed to have the option of a test instead of the vaccine. Most of the cases that courts across the country have dealt with have been vaccine cases where they didn't have an option. Most of them, obviously, they want a religious exemption. But in this case, if they had religious beliefs, which is not alleged in the complaint, they could simply avail themselves of the testing. Are you aware of any cases that struck down a vaccine or test mandate like the one Connecticut had? No, I'm not, Your Honor. Absolutely not. And just to put a finer point on it, I think counsel mentioned this, but obviously there's over a century starting with Jacobson. There's the Zucht case, the Prince case, Phillips. There's more recently the Patriots v. Hochul, which I know Judge Walker was on the panel. And I think when you look at those cases and you take a governor who's dealing with a once-in-a-century pandemic and you say, would he have thought he was violating any constitutional rights? And he has presumably lawyers telling him, well, you have since 1905 been told that a state has the police power to mandate vaccines. And he does not even do that. The test is really an objective one, isn't it? Yes. So it's not really what he was thinking. Was there evidence out there from which it could be concluded that he was violating the law? And your point is that there's no evidence. My point is that, yes, first, that the governor relied on other reasons for doing what he did, including, like, the burden on hospitalization or just the public health in general that are not addressed in the complaint. And then second, even if the governor subjectively believed the vaccine was completely worthless, this court has made clear that the test is an objective one. And to the point Judge Perez was making about the complaint, under this court's Chamberlain case, yes, for qualified immunity, we do have to accept the complaint. But I don't think that any, either Iqbal or Twombly or any of the court's jurisprudence would support a complaint that, you know, made up facts. We don't have to certainly accept those. And I'm not suggesting that plaintiff did that. I don't know that we need to get there. The complaint, you know, says that, as I read it, that the vaccines were not as effective as they were touted to be. They were only moderate effective. The immunity disappeared faster than it was sort of advertised. But I don't think we – I mean, I don't see that as saying that they were completely ineffective or harmful. I couldn't agree more, Judge Park. I think it gets a little bit lost. But I don't think that the complaint alleges that there's no benefit to vaccines. I understand counsel at argument and in the complaint said that the vaccine – that the COVID rates went up after the vaccine, what they call the vaccine mandate, was issued. But that doesn't necessarily mean causation. You know, we don't know what the numbers would have been without the vaccine, for instance. And so I think getting back to the qualified immunity discussion, I actually think the governor acted incredibly responsibly here, if you look at it. In the face of a pandemic of competing interests, and I should add that his executive order specifically mentions that he consulted with collective bargaining groups, of which the teachers are represented by. The governor consulted with these groups. He came up with – his most pressing desire was to get kids back into school in a safe working environment. He made that clear, too. Connecticut was within many states that prioritized in-person learning. So the governor did that. He issued a – well, what they call a vaccine mandate. We'll call it a vaccine testing requirement. It was very temporary. Once the numbers went against him – or went down, I should say, not against him – he let it expire. It was short. The plaintiffs in this case – I want to say one other thing. Judge Walker asked about damages. And I will say this. The executive order itself says nothing about requiring the plaintiffs to pay for their testing or to do it on their own time. I think to the extent that that's their injury, that's really against their school districts that are the employers of the teachers. The mandate did not say anything about either of those things. So to blame it on the mandate, I think, for lack of a better word, is not correct. Can we go back to Jacobson? Certainly we know what Jacobson held, and we know how it's been interpreted. Is there anything that you think – or is there anything to your colleague's argument that Jacobson foreshadows the idea of being able to refuse a vaccine that doesn't prevent infection and transmission of the disease? I mean, I think it's not clearly established there. But is there enough in there? Or what would you say is – what would you say to someone who said there's enough in there? I would say that there isn't. I would say that Jacobson specifically stands for very strong police powers of the state faced with disease. I understand that this – that a virus is different. I think that's the only thing that makes it sort of different. But I can't see anything in Jacobson that speaks to that. So you don't think there's anything in Jacobson that hints at an effectiveness standard? No, I don't, Your Honor. And, in fact, obviously this court – Judge Walker was on the panel in the HOCO case with the Patriots. Jacobson was relied on for upholding the COVID-19 vaccine requirements in that case for nurses. And like I said, I bet you those nurses would have loved to have a testing option. So on those facts, I really don't think that we can strip the governor of qualified immunity, especially when the president required the military to have a COVID-19 vaccination. Court employees, I believe, were, in fact, required to have a COVID-19 vaccination. In the light of all these government officials, the FDA, the CDC, and the governor relying on the FDA evaluations that these vaccines were safe and effective, it would be inappropriate to strip the governor of his qualified immunity and have to proceed under the rigors of litigation. And for those reasons, the district court's dismissal should be affirmed. Thank you, counsel. No rebuttal. Mr. Carlin, you have reserved two minutes. Yes. Thank you. I want to address first the issue of Jacobson very quickly. Just to buttress the point that the holding of Jacobson requires the vaccine to actually prevent transmission and infection of the disease, the holding of Jacobson was that the action of the state could violate the constitutional right to bodily autonomy if the action was taken in furtherance of the government's legitimate police power to protect the public health. So you think that Jacobson is pregnant with an effectiveness standard? Of course, because the action, the phrase— So can I ask you something else? I'm just going back through some of the earlier documents. And from what I can tell, you had some sort of colloquy with the district court where the district court said, is there any clearly established authority? You understand what I mean. You responded, yes. The court said a Second Circuit decision or Supreme Court decision prior to the date of the issuance of the order that made it clear that the order as a whole violated constitutional rights. You responded, there is not. But there is also not any authority that says he did have that authority. Doesn't that put the qualified immunity issue to bed? No, Your Honor. No, Your Honor, because Jacobson is very clear in the phrase that the Supreme Court— But you said there is not when the district court asked you if there was any Second Circuit decision or Supreme Court decision. Directly on point, there is not. Correct. But what I'm arguing is that Jacobson clearly foreshadows that there is a requirement because of the fact that he uses the phrase real and substantial connection to protecting the government— or, excuse me, protecting the public health. The Supreme Court wouldn't have used that phrase multiple times, real and substantial connection to protecting the public health, if there was not some implicit requirement that the drug actually prevented infection or transmission of the disease. If a drug does not prevent infection or transmission of a disease, how does it protect the public health? That's a rhetorical— Wait a minute. Your adversary has offered a bunch of reasons for that. And one of them is the strain on hospitals. These workers would be—presumably, if they got it, if they had the vaccine and it mitigated, they could go back to work earlier. And so there were human resources implications here. All sorts of reasons why a less-than-perfect vaccine would be suitable. This wasn't a less-than-perfect vaccine, Your Honor. This was an experimental platform that did not prevent infection. What vaccine in those days wasn't experimental? I mean, it had never really been tested extensively. They skipped the third test of the FDA approval process. Sure, Your Honor. But the Food and Drug Cosmetic Act, which came into effect in 1938, defines what an experimental drug is. And that's what we're saying, that it's experimental as defined under the Food and Drug Cosmetic Act. And just to be clear, to underscore the issue that you addressed— So it was illegal to approve the drug? Is that what you're saying? No. For the FDA to approve the drug? I think that there was a lot of nefarious influences that pressured and persuaded the— that the FDA to approve this drug where they would not otherwise have done so. For example, when they approved the booster, they actually had members of the board of the vaccine visa resign because of the fact that they were approving the drug. They resigned in protest. So just to be clear, in the complaint we allege on page 47 of the appendix, that the CDC actually had a study in July of 2021 showing that 74 percent of people that have a breakout of COVID-19 in Massachusetts, 74 percent were vaccinated. Yet, so if the drug actually mitigated and did anything, why is 74 percent of people that are vaccinated coming down with the disease? So just using that number alone, that means 74 percent of teachers that got the vaccine and did not test are walking around in those schools with COVID-19 spreading. Well, let's look at it another way. This was suggested by George Park. If you eliminated the vaccination requirement entirely and you just said there's a pandemic going on, people are getting sick with COVID, and you're requiring them to test, what's wrong with that? If there was a blanket test, no vaccine mandate, we would not be here because that would be constitutional. And why isn't it still constitutional? Because the people who don't take the vaccine are required to take the test. Because the vaccine doesn't... It seems like the vaccine is sort of a separate issue, a side issue. The real question is, is the test constitutional? I disagree, Roy, because the testing is completely contingent on the vaccination requirement. If the vaccination requirement doesn't exist, it changes the entire framework of the mandate. The issue in front of us is there was a vaccine mandate. The testing requirement is entirely contingent upon whether or not you've taken a drug that does not prevent infection. You just answered Judge Walker's question, saying that that itself would not be an unconstitutional burden. So if that's the case, if you have that alternative, then haven't you just given away your case? Well, I disagree, Roy, because it's two different analysis. Under the vaccine mandate, we're making a claim for bodily autonomy. The claim that the testing mandate is not constitutional is under equal protection because it discriminated against unvaccinated teachers solely on the fact they did not take the vaccine. And we're not even arguing that that should be some heightened standard. We're simply looking at it at the rational basis standard. Under equal protection, saying that if the basis, if the government action, the basis of dividing and treating two groups differently has no rational basis in actually advancing a government interest, then that, in fact, violates the equal protection clause of the Constitution. And you're not aware of any case in which a court has struck down a vaccine or test requirement, are you? I'm not aware of two things. I'm not aware of any case that is making these arguments that are based on the presupposition or based on the premise that the vaccine does not prevent infection or transmission of the disease. All the prior case law presupposes that the vaccine does, in fact, prevent infection or transmission of the disease. And then number two, this is the first time I'm aware of there's ever been a vaccine mandate, testing mandate of this kind. So, of course, there's not going to be any case law on point. But that's why this court has ruled in previous cases that case law directly on point is not necessary. It's not necessary for all those other cases, all the cases that did not have a testing component. It just required a vaccine, that the vaccine be taken and have a vaccine mandate a fortiori to your case from the government, because, you know, here they're let off the hook. They can get a test. And the test, you said, is not unconstitutional. Well, Your Honor, you can make the same argument about Jacobson, because in Jacobson, the appellant in that case, Mr. Jacobson, just paid a five dollar fine. So you can make that same argument with every single case that's ever been before any other court in this country is that it wasn't a true vaccine mandate because they had a choice. They'd either take the vaccine or take some other punishment. But no other case in history has just because that there is an alternate that someone isn't being strapped to a table and forcibly injected. Does that not make it a true vaccine mandate for constitutional analysis? That's the heart of the issue. Isn't this case exactly the same as if the mandate was be tested? And if you refuse to take a test, take a vaccine? No, Your Honor, because there would be no there would be no equal protection analysis in that case because it's treating all teachers the same. Then again, if we wanted to make a I suppose hypothetically, you could make a constitutional bodily autonomy claim. But that's not what we're making in this case. We're making an equal equal protection case on the vaccine mandate because the sole reason for treating two groups differently was not was whether or not the individuals took a vaccine that does not prevent infection or transmission of the disease. And it defies it defies logic why that would ever be permissible in a country that we were supposed to have be free people. OK, thank you, counsel. Thank you both. We'll take the case under advisement.